UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| GENERAL CASUALTY COMPANY OF WISCONSIN, ) ) ) ) | |
| Plaintiff ) ) | |
| v. ) ) | Civil Action No. 11-30254-DJC |
| FIVE STAR BUILDING CORPORATION and UNIVERSITY OF MASSACHUSETTS, AMHERST, ) ) ) ) | |
| Defendants. ) ) ) | |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                               September 19, 2013

## I. Introduction

Plaintiff General Casualty Company of Wisconsin ("General Casualty") has filed this lawsuit against defendants Five Star Building Corporation ("Five Star") and the University of Massachusetts, Amherst ("UMass") for a declaratory judgment that an insurance policy (the "Policy"), which General Casualty issued to Five Star, does not require the insurer to provide coverage to Five Star for property damage to the roof system[1] that UMass allegedly sustained arising out of work that Five Star performed or to indemnify it for any claims asserted by UMass.

---

[1] Although General Casualty's complaint states claims for two separate declaratory judgments, it only presses a declaratory judgment as to Count I, which addresses property damage to the roof system at Morrill Science Center. D. 1 at 7. As to Count II, which addresses property damage related to mold, General Casualty acknowledges that this claim is now moot in light of the fact that Five Star has not sought recovery for mold-related damage. D. 19 at 13.

1

D. 1.  Five Star has counterclaimed for (1) a declaratory judgment that the Policy entitles Five Star to coverage and indemnification for claims asserted against it by UMass; (2) breach of contract; and (3) unfair and deceptive trade practices in violation of Mass. Gen. Laws c. 176D and c. 93A.  D. 7.  General Casualty has moved for summary judgment on its claim for a declaratory judgment as to Count I and on Five Star's claims.  D. 18.  Five Star has opposed General Casualty's motion and has cross-moved for partial summary judgment on its declaratory judgment and breach of contract claims.  D. 26, D. 27.  For the reasons stated below, General Casualty's motion for summary judgment is DENIED and Five Star's motion for summary judgment is GRANTED.

## II.     Burden of Proof and Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

When "presented with cross-motions for summary judgment, [the Court] 'must view each motion separately,' in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor."  OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Can., 684 F.3d 237, 241 (1st Cir. 2012) (quoting Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010)).

"The party who has the burden of proof on a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is conclusive." Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998). In other words, the movant's showing must be sufficient for the court to hold that "no reasonable trier of fact could find other than for the moving party." Id. (quoting Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986)).

Where the nonmovant bears the burden of proof on the dispositive issue, the movant bears the initial burden of explaining the reasons for the motion and identifying admissible evidence that "demonstrate the absence of any genuine issue of material fact." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). If the movant does so, then the nonmovant "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonable resolve that issue in her favor." Id.

### III.   Factual Background and Procedural History

The material facts of this case are undisputed. UMass, a major state-run higher educational institution, hired Five Star to upgrade the ventilation or "HVAC" system in a portion of UMass's Morrill Science Center ("Morrill"). D. 19 ¶ 1 (General Casualty's Statement of Material Facts).[2] In July 2011, General Casualty had insured Five Star under Comprehensive Insurance Policy No. CCI 0394412 (the "Policy"). Id. ¶ 25. General Casualty issued the Policy to Five Star and the policy was effective from May 9, 2011 through May 9, 2012. Id. The Policy includes a Commercial General Liability Coverage Form (the "CGL Form") which provides, in pertinent part:

---

[2] General Casualty has incorporated its Statement of Facts into its Memorandum in Support of its Motion for Summary Judgment. To the extent the Court cites to General Casualty's Statement of Facts, it refers to pp. 2-7 of its Memorandum. Five Star has stipulated to General Casualty's Statement of Material Facts. D. 28.

3

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
. . .
b. This insurance applies to "bodily injury" and "property damage"
only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .

**2. Exclusions**
This insurance does not apply to:
. . .
**j. Damage to the Property**
"Property damage" to:
. . .
**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**SECTION V – DEFINITIONS**
. . .
**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
. . .
**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property.
All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
For the purpose of this insurance, electronic data is not tangible property.
. . .

> **22.** "Your work":
>
> **a.** Means:
>
> **(1)** Work or operations performed by you or on your behalf; and
> **(2)** Materials, parts or equipment furnished in connection with such work or operations.
>
> **b.** Includes:
>
> **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
> **(2)** The providing of or failure to provide warnings or instructions.

Id. ¶ 26.

The large majority of the HVAC upgrade involved work in the interior of Morrill, but a small portion of the project involved installation of ductwork and ductwork supports on the top of the roof of the complex. D. 28 ¶ 2 (Five Star's Statement of Material Facts).[3] However, as part of its effort to upgrade the HVAC system, Five Star penetrated the existing roofing system in numerous locations to install supports for duct work and other rooftop structures related to the ventilation system. D. 19 ¶ 2. To accomplish this, Five Star's subcontractors penetrated the PVC membrane and layer of isocryanurate insulation at locations where the duct supports would be installed. Id. ¶ 3. Other subcontractors would then secure supports to the concrete roof deck and install permanent patches and flashing where Five Star and its subcontractors had penetrated the roofing system. Id. ¶ 5-6.

In some cases, Five Star and its subcontractors could not accomplish this process in a single day and sometimes Five Star penetrated the ceiling the day before installing the supports and permanent patches. Id. ¶¶ 7-9. In these cases, Five Star installed temporary patches pending the installation of permanent patches. Id. This was the only work on the roof that Five Star

---

[3] General Casualty has stipulated to Five Star's Statement of Material Facts. D. 34 at 2.

performed.  D. 28 ¶ 2.  It is common for an HVAC contractor to puncture various building surfaces to affix HVAC apparatus or supports for building structures.  Id. ¶ 3.

During the evening of July 7-8, 2011, there was a severe rainstorm at the worksite in Amherst, Massachusetts, during which nine of Five Star's temporary patches failed.  D. 19 ¶ 11.  This caused rainwater to pool on the surface of the patches, allowing the adhesive securing the edges of the patches to separate.  Id. ¶ 12.  The rainwater then penetrated the roof membrane, traveled along the roof deck and pooled in low-lying areas.  Id. ¶ 13.  At these points, the insulation became saturated, requiring the insulation's removal and replacement.  Id. ¶ 14.  Only one failed patch was in a location in which rainwater had soaked the roofing insulation.  D. 28 ¶ 4.  In addition, the rainwater caused damage to the interior of the building and its contents.  D. 19 ¶ 20.  Five Star reported this matter to General Casualty, who agreed to provide coverage for most of the damage to the interior and contents of the building, but denied coverage for damage to the roofing system.  Id. ¶¶ 21-22.

General Casualty commenced this action on November 10, 2012.  D. 1.  Both parties have now moved for summary judgment.  D. 17, 27.

**IV.   Discussion**

There are four legal issues raised by the parties' cross-motions.  First, the parties dispute whether the water damage at Morrill constituted an "occurrence" under the terms of the Policy.  Second, the parties disagree about whether the first of two business risk exclusions, Subsection (2)(j)(5), precludes insurance coverage because the roof constitutes the "particular part" of the property upon which Five Star was working.  Third, the parties dispute whether the second business risk exclusion in Subsection (2)(j)(6) precludes insurance coverage because "[Five Star's] work was incorrectly performed."  Fourth, the parties dispute whether the General

6

Casualty committed an unfair and deceptive trade practice by denying insurance coverage. The Court considers each issue in turn.

At the outset, the Court notes that "[t]he interpretation of an insurance contract is a question of law." Bos. Gas Co. v. Century Indem. Co., 454 Mass. 337, 355 (2009). "The interpretation of an insurance contract is no different from the interpretation of any other contract, and [the Court] must construe the words of the policy in their usual and ordinary sense." Hakim v. Mass. Insurers' Insolvency Fund, 424 Mass. 275, 280 (1997). Where insurance agreements are "ambiguous, 'doubts as to the . . . meaning of the words must be resolved against the insurance company . . . and in favor of the insured.'" Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 146 (1982) (quoting August A. Busch & Co. of Mass. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243 (1959)). Although courts often apply the constructions of prior insurance agreements to similar provisions, see, e.g., Frankel v. J. Watson Co., 21 Mass. App. Ct. 43, 46 (1985), every insurance agreement is different and every word "must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 628 (2007) (citations omitted). With these principles in mind, the Court addresses the insurance agreement at issue in this case.

    A.    **The Rain Damage to the Morrill Roof Constitutes an "Occurrence"**

Five Star, as the insured, bears the burden of proving its claim falls within the scope of coverage under the Policy. Allmerica Fin. Corp., 449 Mass. at 628. Section 1 of the CGL Form in the Policy provides that General Casualty will pay those sums that it is obligated to pay arising out of any "occurrence." D. 19 at 5. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 6.

7

Courts in this district and other jurisdictions have been repeatedly called upon to construe the meaning of "occurrence." See, e.g., Am. Home Assur. Co. v. AGM Marine Contractors, Inc., 379 F. Supp. 2d 134, 136 (D. Mass. 2005), aff'd 467 F.3d 810 (1st Cir. 2006); Cherington v. Erie Ins. Property & Cas. Co., No. 12–0036, 2013 WL 3156003, at n. 19 (W. Va. Jun. 18, 2013) (collecting cases).

General Casualty argues that as a matter of Massachusetts law, faulty workmanship cannot constitute an occurrence. D. 19 at 8. Some courts applying Massachusetts law have reached this conclusion. See AGM, 379 F. Supp. 2d at 136 (citing Davenport v. U.S. Fid. & Guar. Co., 56 Mass. App. Ct. 1109 (2002) (Table) for the proposition that "faulty workmanship fails to constitute an accidental occurrence in a commercial general liability policy"). Five Star has countered that even assuming Five Star installed the temporary patches negligently, faulty workmanship fails to constitute an occurrence only if it is the sole isolated cause of the property damage; indeed Five Star argues that the true occurrence in this case was the rainstorm that caused the damage and not its own workmanship, faulty or otherwise. D. 31 at 4 (citing Oxford Aviation, Inc. v. Global Aerospace, Inc., 680 F.3d 85 (1st Cir. 2012) (applying Maine law); Davenport, 56 Mass. App. Ct. at 1109). In short, the thrust of Five Star's argument is that although faulty workmanship may not itself constitute an occurrence, the occurrence here was a torrential rainstorm which lead to leaking, even if that leaking was caused in part by its allegedly faulty workmanship.

Although the Supreme Judicial Court has not decisively circumscribed the bounds of what constitutes an occurrence under Massachusetts law, other courts applying Massachusetts law have endorsed the distinction that Five Star posits. For example, the Massachusetts Appeals Court, in deciding Davenport, noted that although "[f]aulty workmanship, alone, is not an

'occurrence,'" insurance coverage would extend to "faulty workmanship which causes an accident." 56 Mass. App. Ct. at 1109 (quoting Weedo v. Stone-E-Brick, Inc., 405 A.2d 788, 796 (N.J. 1979) (noting that "the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident"); see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Modern Cont'l Const. Co., Inc., No. 08-2015-BLS-1, 2009 WL 6376180, at *3 (Mass. Super. Dec. 11, 2009) (construing "occurrence" and "accident" broadly to find that faulty workmanship causing the collapse of the I-90 Connector Tunnel to be an "accident" and therefore an "occurrence"). Moreover, while some courts in other jurisdictions initially followed Weedo, see, e.g., Ohio Cas. Ins. Co. v. Bazzi Constr. Co., Inc., 815 F.2d 1146, 1148 (7th Cir. 1987) (holding that insurance policy covered property damage caused by faulty workmanship, where damage to property was not part of general contractor's work product), other courts have gone even farther, finding that faulty workmanship can constitute an accident and thus an occurrence, provided that the "defective work . . . [was] without intention or design." See, e.g., Sheehan Const. Co., Inc. v. Cont'l Cas. Co., 935 N.E.2d 160, 171-72 opinion adhered to as modified on reh'g, 938 N.E.2d 685 (Ind. 2010) (internal quotation marks omitted). Additionally, "[t]hree states have enacted legislation requiring [general liability insurance] policies to include coverage for defective work and/or injuries and damages attributable thereto." Cherington, 2013 WL 3156003, at n. 20 (citing Ark. Code Ann. § 23–79–155(a)(2) (2011); Colo. Rev. Stat. § 13–20–808(3) (2010); S.C. Code Ann. § 38–61–70(B)(2) (2011)).

Even considering Weedo, which Massachusetts courts have, the rain damage to the Morrill roof constitutes an occurrence. Assuming that Five Star engaged in faulty workmanship, its workmanship extended only as far as the installation of temporary patches and not to the roof itself. D. 28 at 1-2. Thus, Five Star does not seek coverage for faulty workmanship itself, but

rather coverage of the damage resulting from the rainstorm even if such allegedly faulty workmanship contributed to the leaking. The rain damage to the roofing system, therefore, is an "occurrence" under the Policy.

### B. The Exclusion in Section (2)(j)(5) Does Not Bar Coverage

Once there has been a showing of coverage under the Policy, the burden is on General Casualty to show that such coverage is excluded by exclusions in the Policy. Hakim v. Mass. Insurers' Insolvency Fund, 424 Mass. 275, 283 n. 13 (1997). Section 2(j)(5) of the CGL Form excludes from coverage "'property damage' . . . to [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." D. 20-8 at 46.

General Casualty argues that the entire roof was the "particular part" on which Five Star and its subcontractors were working and therefore that damage to the roof is excluded from coverage. D. 19 at 11. In support of this argument, General Casualty cites Jet Line Servs., Inc. v. Am. Emp'rs Ins. Co, 404 Mass. 706, 711 (1989). In that case, a property owner hired the plaintiff to clean the entirety of a petroleum tank. Id. at 707. While the plaintiff's employees were working, the petroleum tank exploded. Id. In applying an exclusion analogous to Section 2(j)(5), the Court held that because "the insured was retained to perform work on an entire unit of property. . . the exclusion [applied to] damage to the entire unit." Id. at 712.[4]

---

[4] General Casualty also cites Lusalon, Inc. v. Hartford Acc. & Indem. Co., 400 Mass. 767, 770 (1987) and Bond Bros. v. Robinson, 393 Mass. 546, 547-48 (1984) for the same proposition, but neither compels a different outcome here. Lusalon addressed an insurer's obligation to provide coverage to a contractor who negligently cleaned window frames. Lusalon, 400 Mass. at 767. On further appellate review, the Court agreed with the Appeals Court that cleaning the frames was part of the contractor's work product. Id. at 770 & n. 4. Similarly, Bond Bros. addressed a contractor's failure to complete the installation of reinforcing steel and welded wire mesh for a concrete foundation. 393 Mass. at 547. The Court assumed in passing, without deciding, that the contractor's work product was the entire foundation, but decided the

Five Star, in turn, relies on Frankel, in which the plaintiffs contracted with the insured to move and construct a new foundation for their farmhouse. Frankel, 21 Mass. App. Ct. at 44. Once the insured moved and lowered the farmhouse onto the new foundation, the farmhouse's superstructure began to sag. Id. The Court found that an analogous exclusion barred recovery for damage to the foundation, but that "plaintiffs' claimed damages to the superstructure did not fall within the exclusionary language and were recoverable." Id. at 46. In so doing, the Court distinguished "between damage to the work product of the insured and damage to larger units of which the insured's work product is but a component." Id. (collecting cases).

General Casualty would have the Court disregard Frankel and consider it inconsistent with later decisions. D. 34 at 8.[5] However, later decisions in Massachusetts strengthen the distinction between property damage that goes to the essence of the insured's work, which falls within the scope of the 2(j)(5) exclusion, and property damage that is merely incidental to the

---

case on a different exclusion. Id. at 548. In essence, the circumstances in question in those cases was more akin to the factual scenario in Jet Line than that in Frankel.

[5] General Casualty cites Fed. Ins. Co. v. Hermitage Ins. Co., No. 00-12310-DPW, 2002 WL 31194872 (D. Mass. Sept. 25, 2002) for the proposition that there is "significant doubt" as to Frankel's continued validity in Massachusetts. Id. (citing Donovan v. Commercial Union Ins. Co., 44 Mass. App. Ct. 596, 600 (1998)). First, Donovan does not overrule Frankel, as it applies the distinction discussed in Frankel. Id. at 602. Second, Massachusetts courts continue to construe exclusions that are limited to "that particular part of the property" as being limited to "coverage for the work product of the insured but not for damage to larger units of which the insured's work product is but a component." U.S. Fire Ins. v. Peerless Ins. Co., No. 00-5595, 2004 WL 1515591, at *8 (Mass. Super. June 15, 2004); see also Mello Const., Inc. v. Acadia Ins. Co., 70 Mass. App. Ct. 1104 (2007) (Table) (distinguishing Frankel but finding it is "consistent with this Court's stance"); E.H. Spencer & Co., LLC v. Essex Ins. Co., No. 06-0135, 2009 WL 2231222 (Mass. Super. May 27, 2009) (noting that Jet Line and Frankel are "easily reconciled" and applying Jet Line because insured "was hired to build the dwelling in question"), aff'd, 79 Mass. App. Ct. 1109 (2011) (noting that insured is not seeking damages for "other property" than the insured's work product) (citing Caplette, 420 Mass. at 92-93). Nor has the First Circuit dispensed with Frankel. See Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 407 (1st Cir. 2009) (citing Frankel and recognizing distinction between damage to insured's own work product and damage to other property). The Court therefore disagrees with the suggestion that Frankel is no longer good law.

insured's work to which the exclusion does not apply. As the Supreme Judicial Court noted in Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 92 (1995), "the exclusion does not apply where the product or work causes damages to other persons or property. In such a situation, while there would not be coverage for damage to the work or product itself, damages caused by the product to other work or products would be covered." Id. This distinction is consistent with the goal of the exclusion, "which is to protect the insured from the claims of injury or damage to others, but not to insure against economic loss sustained by the insured due to repairing or replacing its own defective work or products." Id. (quoting 2 R. Long, Liability Ins. § 11.09(2) (1993)).

Here, the scope of Five Star's work extended only to the replacement of the ventilation system. D. 19 ¶ 1. UMass did not hire Five Star to replace or repair its roof. Id. As part of its work, Five Star was required to puncture holes in the roof, which did in part facilitate the rainwater's penetration of the building. Id. ¶¶ 2, 11. However, Five Star's roof-work was merely incidental to the replacement of the HVAC ventilation system; indeed, it accounted for less than 2.5 percent of Five Star's total work on the project. D. 28 ¶ 2. For this reason, the Court cannot say that Five Star's work on the roof went to the essence of the work that it UMass contracted it to perform. Instead, this is a situation where "the . . . work causes damages to other . . . property," Caplette, 420 Mass. at 92, and not "to the product or the completed work [i.e. the ventilation system] itself." Id. (quoting Roger C. Henderson, Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know, 50 Neb. L. Rev. 415, 441 (1971)). The cases cited by General Casualty, therefore, do not aid its position here where the damage claimed bears an insufficient nexus to the scope of the work Five Star was engaged to perform. Accordingly, the Court finds that the Section 2(j)(5) exclusion does not apply.

**C.     The Exclusion in Section (2)(j)(6) Does Not Bar Coverage**

Section 2(j)(6) of the Policy excludes from coverage "'property damage to' . . . [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

Five Star argues that General Casualty has not demonstrated that Five Star or its subcontractors engaged in faulty workmanship or performed work incorrectly.  D. 41 at 20 (transcript of oral argument); D. 31 at 8 (noting that "General Casualty presents no evidence of faulty workmanship or the 'incorrect perform[ance]' of Five Star's work").  Although General Casualty argues that the temporary patches were faulty or indicate "incorrect performance" because the temporary patches were installed to keep rainwater out and they failed to do so, D. 19 at 3, this argument assumes either a strict liability or breach of contract theory of faulty workmanship.  Given the language in the Policy, a negligence standard and not a strict liability or breach of contract standard should apply.  See, e.g., Lundquist v. Cambridge Mut. Fire Ins. Co., No. 05-917, 2007 WL 4711404, at *4 (Mass. Super. Dec. 14, 2007) (applying the language in an insurance policy to determine whether the construction of the foundation at issue "was in accord with the common practice at the time it was built, is faulty, inadequate or defective, thus excluding coverage for the plaintiff's losses").

Although the parties agree that the material facts are undisputed in regard to this issue, General Casualty, the party that bears the burden on demonstrating that a given exclusion applies, Hakim, 424 Mass. at 283 n. 13, has failed to do so on this record.  Five Star has proffered evidence demonstrating that penetration of building surfaces is common practice when installing HVAC systems.  D. 28 ¶¶ 3-4 (relying upon the uncontroverted affidavit of Kevin

Perrier, founder, president and sole shareholder of Five Star,[6] that attests that "[i]t is very common, indeed necessary, for an HVAC contractor to puncture or penetrate various building surfaces, sometimes removing portions of building materials, in order to affix HVAC apparatus or supports to building structures" and that the work on the Morrill projections "involved the penetration of floors, concrete walls, drywall, ceilings and roofing materials," Perrier Aff., D. 29 at ¶ 7). See Bergendahl v. Mass. Elec. Co., 45 Mass. App. Ct. 715, 719-20 (1998) (noting that "compliance with industry practice militates against a finding of negligence" and even if such is not necessarily conclusive, it is the plaintiff's burden to bring forward countervailing evidence of negligence notwithstanding conformity with industry standards) (collecting cases). Moreover, Perrier attests that, as demonstrated in the Moisture Survey Plan, Exh. A, Perrier Aff., "[o]nly one failed patch was in an area in which roofing insulation was water-soaked, and that was only on the edge of a large soaked area," "[a]ll other areas where insulation became water-soaked were not in an area in which a patch had failed," and even in most areas where the insulated was water-soaked, "Five Star had not applied patches or otherwise performed work on the roof at all." Perrier Aff., D. 29 at ¶¶ 10-11 (emphasis in original).

Although General Casualty asserts that the failure of (nine of) the temporary patches indicate incorrect performance, D. 19 at 3, "saying so does not make it so," Raad v. Lime Fin. Servs., Ltd., No. 11-11791, 2012 WL 4469107, at *4 (D. Mass. Sept. 28, 2012), and General Casualty has failed to show, on this record, how such workmanship fell below a reasonable standard of care.

---

[6] For the purposes of summary judgment, General Casualty did not dispute the "additional assertions premised upon the affidavit of [Five Star's] owner and president, Kevin Perrier." D. 34 at 2.

In light of the foregoing, the Court finds that there is no genuine issue of material fact precluding summary judgment in Five Star's favor in regard to coverage of its claim under the Policy. Accordingly, the Court therefore DENIES General Casualty's motion for summary judgment as to Count I and ALLOWS Five Star's motion for summary judgment as to Count I of its counterclaims.

### D.     Five Star's Breach of Contract Claim

In Count II of its counterclaims, Five Star alleges that by declining to provide insurance coverage, General Casualty has breached the terms of the Policy. D. 7 ¶¶ 17-18. The elements of a breach of contract claim are: 1) the existence of a valid and binding contract; 2) the breach of that contract by one party; and 3) that the other party suffered damages from that breach. Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999) (applying Massachusetts law). As both parties rely on the Policy in asserting their claims, they do not dispute that the Policy is a valid and binding contract. See D. 19 ¶ 25. For the reasons discussed above, General Casualty breached that contract by denying coverage under the Policy. As a consequence of this breach, Five Star suffered damages by facilitating the roof repairs at a cost of $276,875.00. Id. ¶ 23. Accordingly, the Court ALLOWS summary judgment in favor of Five Star as to its breach of contract claim consistent with its ruling as to the scope of coverage under the Policy.

### E.     Five Star's Mass. Gen. Laws c. 93A and 176D Claim

Five Star has further alleged that by declining to provide coverage for the damage to the roof, General Casualty has also committed an unfair and deceptive act or practice in violation of Mass. Gen. Laws c. 93A and c. 176D. D. 7 at 6. In its motion for summary judgment, General Casualty argued that it was entitled to a finding as a matter of law that there was no such unfair or deceptive act or practice because General Casualty's actions were "legally correct." D. 19 at

13. In light of this Court's ruling regarding coverage in favor of Five Star, the Court cannot make this predicate finding and this argument cannot succeed. Accordingly, the Court DENIES summary judgment to General Casualty as to this claim.

However, even in denying General Casualty's motion for summary judgment, the Court notes that there appears to be no evidence of bad faith in the record. In fact, General Casualty agreed to provide coverage for most of the damage to the interior and contents of the building, D. 19 ¶ 22, militating against a finding of bad faith. Moreover, the Court notes that General Casualty's interpretation of the Policy at issue did not appear implausible given the state of the law as discussed above. See Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987) (noting that "[a]n insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to have committed a violation of G.L. c. 93A"). However, given that the only argument before the Court is General Casualty's argument that its actions were "legally correct," the Court takes no further action as to Count III of Five Star's counterclaims at this juncture.[7]

## V. Conclusion

For the foregoing reasons, the Court ALLOWS Five Star's motion for summary judgment, D. 27, and DENIES General Casualty's motion for summary judgment, D. 17.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[7] Five Star has not cross-moved for summary judgment on this claim. See D. 41 at 32.